# UNITED STATED DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

APOTHECARY ARTS PHARMACY, INC :
    et al,                          :
                     Plaintiffs,      :
                 v.              :      Civil Action No. 6-119 (RCL)
                              :
ALBERTO GONZALES, et al,      :
                 Defendants.    :

## MOTION TO DISMISS

Defendants respectfully moves to dismiss plaintiffs' complaint.  A memorandum of

points and authorities in support of this motion is attached.

Respectfully submitted,

_____

KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney

_____

R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney

_____

RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514/6970

1

UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

APOTHECARY ARTS PHARMACY, INC :
    et al,                 :
              Plaintiffs,      :
        v.               :     Civil Action No. 6-119 (RCL)
                       :
ALBERTO GONZALES, et al,    :
         Defendants.      :

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND
OPPOSITION TO PLAINTIFF'S MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Defendants, by and through the United States Attorney for the District of Columbia files

this response in opposition to Plaintiff's Motion for a Temporary Restraining Order and

Preliminary Injunction, and supporting Memorandum of Law. Defendants also move for an order

to summarily dismiss Plaintiff 's motions for a temporary restraining order and a preliminary

injunction. In support of their response and motions, defendants present the following .

BACKGROUND, STATEMENT OF FACTS AND ARGUMENT.

I.     **Statutory and Regulatory Scheme**

     **Revocation and Immediate Suspension**

Under the Controlled Substances Act (CSA), any person who distributes or dispenses

controlled substances must obtain a registration from the Drug Enforcement Administration

(DEA) . 21 U.S.C.§ 822 (a).   Plaintiffs, as retail pharmacies that dispense controlled substances,

must obtain a registration at least every three years from DEA.  *Id.*

DEA may revoke a retail pharmacy's registration based on the grounds set forth in 21

U.S.C. § 824 (a) and 21 U.S.C. § 823 (f).  DEA is required to serve an Order to Show Cause on

the registrant and give the registrant an opportunity for a hearing before an Administrative Law

Judge (ALJ) in order to contest the proposed revocation.  21 U.S.C. § 824(c).  Under 21 C.F.R.

1301.36 (i) , as long as a DEA registrant submits his application in a timely manner Order to

Show Cause proceedings will not void the registration.   The ALJ may and does require the

parties to submit prehearing statements in which the parties list a summary of the witnesses'

testimony and the documents to be produced at the hearing. 21 C.F.R.§ 1316.58.

DEA may, however, suspend a registration simultaneously with the institution of

proceedings under section 824 where DEA finds that there is an imminent danger to the public

health and safety. 21 U.S.C. § 824 (d) . Such findings must be stated in the Order to Show Cause.

21 C.F.R. § 1301.36 (e).

In the event of an immediate suspension, the registrant is entitled to and is informed of,

his right to an expedited administrative hearing on the proposed revocation. 21 C.F.R. § 1301.36

(h).

The suspension remains in effect until the DEA Deputy Administrator issues her final

order unless, in the interim, the suspension is "withdrawn by the [Deputy Administrator] or

dissolved by a court of competent jurisdiction." 21 U.S.C. §824 (d).  Title 21 U.S.C. § 877 gives

the United States Court of Appeals for the District of Columbia, or the for the circuit in which

the plaintiff's principal place of business is located, jurisdiction over final decisions, findings and

conclusions of the Administrator.  A petition must be filed within 30 days after notice of the

decision.  21 U.S.C. §877.

**Dispensing Pharmacies**

The Controlled Substances Act (CSA) regulations establish certain responsibilities, not only on individual practitioners who issue prescriptions for controlled substances, but also on pharmacists who fill them. A pharmacist's "correspondent responsibility" regarding the proper dispensing of controlled substances is explicitly described in 21 C.F.R. § 1306.04 (a). It provides

> A prescription for a controlled substance to be effective must be issued for a
> legitimate medical purpose by an individual practitioner acting in the usual course
> of his professional practice. The responsibility for the proper prescribing and.
> dispensing of controlled substances is upon the prescribing practitioner, but a
> corresponding responsibility rests with the pharmacist who fills the prescription.

21 C.F.R. § 1306.04 (a). Prescriptions issued not in the "usual course of professional treatment" are not "prescriptions" for purposes of the CSA and individuals issuing and filling such purported prescriptions are subject to the penalties for violating the CSA's controlled substances provisions. *Id.*

The CSA regulations specifically address the growing usage and multi-faceted impact of the Internet. In an April 21, 2001, policy statement, titled *Dispensing and Purchasing Controlled Substances Over the Internet*, 66 Fed Reg. 21, 81 (2001), DEA delineated certain circumstances in which prescribing over the Internet is unlawful. The policy provides, inter alia, that a controlled substance should not be issued or dispensed unless there was a bona fide doctor/patient relationship. Such a relationship required that the patient has a medical complaint, a medical history be taken, a physical examination be performed, and that some logical connection exists between the medical complaint, the medical history, the physical examination, and the drug prescribed. The policy statement specifically explained that the completion of "a questionnaire that is then reviewed by a doctor hired by the Internet pharmacy could not be

considered the basis for a doctor/patient relationship . . . ." *Id*. at 21,182-2l, 183.

## II. Procedural Background

On September 21, 2005, DEA served on plaintiffs with Orders to Show Cause and

Immediate Suspensions of Registration (hereinafter referred to as "Order to Show Cause").

Complaint at ¶¶34, 42.   The Orders to Show Cause advised plaintiffs of their right to an

expedited administrative hearing on the proposed revocation under 21 C.F.R. §1301.36 (h).

> If you request an expedited hearing pursuant to 21 C.F.R. § 1301.36(h), such hearing will be held at 600 Army-Navy Drive, Arlington, Virginia, thirty (30) days after the date on which your written request is received by the Office of Administrative Law Judges, Drug Enforcement Administration, Washington, D.C.. . . .   The date and location may be changed by the Administrative Law Judge responsible for the case, after notice and consultation with the parties, and will be fixed as early as is reasonably possible.

Hyman Dec. Ex. A at p.7; Longo Dec. Ex A at p. 9.

On October 21, 2005, plaintiffs filed their requests for expedited hearings.  Complaint at

¶45.

In her Order for Prehearing Statements dated October 25, 2005, the ALJ advised counsel

that it was not possible to hold the hearing thirty days later, i.e. on November 20, 2005;  she

advised that the date of the hearing would be set after the filing of prehearing statements. Behr

Dec. at Ex. A,  p. 2.  Plaintiffs do not contend that they made any objection to putting off the

hearing date. *Id.* at Ex. A.

At the pre-hearing conference held on January 18, 2006, the dates for the hearing were set

for March 21-23, April 25-27 and May 23-25, 2006.  Behr Dec. at ¶5.  Plaintiffs do not claim that

they made any objection to the dates set, or that they requested a more expedited timetable from

the ALJ. *Id.*

4

On January 23, 2006, plaintiffs filed the instant action seeking a preliminary injunction and declaratory relief.  They claim

1. that the Controlled Substances Act is unconstitutional, in violation of the Fifth Amendment due process clause, because it does not provide for a prompt post-suspension hearing after an immediate suspension of Registration. Complaint at ¶¶53-55.

2. that DEA's procedures violate plaintiff's due process rights because the procedures do not provide for a prompt post-suspension hearing on immediate suspension of registrations.  *Id.* at ¶¶ 56-57.

3.  that the immediate suspension should be dissolved because "there is no basis for a continued finding that Plaintiffs' registration represents an immediate danger to the public health and safety . . ."  due to an amended rule of the Colorado State Pharmacy Board "prohibiting the filling of prescriptions issued solely upon the patient's completion of an Internet questionnaire" and other unspecified reasons.  ¶¶ 58-60.

Plaintiffs request that DEA's authority to immediately suspend registrations under 21 U.S.C. §824(d) and DEA's procedures in reviewing immediate suspensions be declared unconstitutional; that defendant be enjoined for suspending plaintiff's registrations, and that the suspensions be dissolved.  *Id*. at ¶¶61-65.

**III. Statement Of Facts**

As is discussed in more detail below, plaintiffs are pharmacies located in the Denver, Colorado area, registered to dispense controlled substances.  Complaint at ¶2.  An investigation conducted by the DEA established that plaintiffs were participating in Internet drug operations filling hundreds of prescriptions per day despite substantial evidence that the patients did not

have a doctor-patient relationship with the prescribing physicians.  Aurora Show Cause Order at

¶8, City View Show Cause Order at ¶8.

## IV. Argument

### District Court Lacks Subject Matter Jurisdiction

The United States Code vests jurisdiction in the Court of Appeals over the decisions of

the Administrator in this case :

> All final determinations, findings, and conclusions of the [Deputy Administrator]
> under this subchapter shall be final and conclusive decisions of the matters
> involved, except that any person aggrieved by a final decision of the  [Deputy
> Administrator] may obtain review of the decision in the United States Court of
> Appeals for the District of Columbia or for the circuit in which his principal place
> of business is located upon petition filed with the court and delivered to the
> Attorney General within thirty days after notice of the decision. Findings of fact by
> the  [Deputy Administrator], if supported by substantial evidence, shall be
> conclusive.

21 U.S.C.A. § 877.

Under the law of this Circuit, this statute places exclusive jurisdiction for review of the

decisions in the Court of Appeals.  *Telecommunications Research and Action Center v. F.C.C.*,

750 F.2d 70, 77 (D.C. Cir.1984).  Additionally, the D.C. Circuit has ruled that "where a statute

commits review of agency action to the Court of Appeals, any suit seeking relief that might affect

the Circuit Court's future jurisdiction is subject to the exclusive review of the Court of Appeals.

*Id.* 750 F.2d at 78-79.  *See also In re Tennant*,  359 F.3d 523, 529 .D.C.Cir. 2004)("Once there

has been a proceeding of some kind instituted before an agency or court that might lead to an

appeal, it makes sense to speak of the matter as being "within [our] appellate jurisdiction" --

however prospective or potential that jurisdiction might be.").  Plaintiffs' request for an

immediate hearing on the revocation is clearly a proceeding before the agency which might lead to

an appeal.  Moreover, plaintiffs' request to this Court to find the CSA unconstitutional affects the

Circuit Court's jurisdiction to review the Administrator's proposed revocation and suspension

determinations.  *See, e.g. Telecommunications Research,* 750 F.2d at 79 ("Claims of unreasonable

agency delay clearly fall into that narrow class of interlocutory appeals from agency action over

which we appropriately should exercise our jurisdiction. It is obvious that the benefits of agency

expertise and creation of a record will not be realized if the agency never takes action. Agency

delay claims also meet Judge Leventhal's suggested criteria for our interlocutory intervention--not

only is there an outright violation of 5 U.S.C. § 555(b)'s mandate that agencies decide matters in a

reasonable time, there also is no need for the court to consider the merits of the issue before the

agency. Finally and most significantly, Congress has instructed statutory review courts to compel

agency action that has been unreasonably delayed. 5 U.S.C. § 706(1)");  *Community Nutrition*

*Institute v. Young,*  773 F.2d 1356, 1361 (D.C.Cir.1985)(" The jurisdiction to review agency

inaction lies exclusively in this court.")

However, as noted above, the District Court is not the appropriate court of competent

jurisdiction for purposes of obtaining dissolution of the suspensions pursuant to 21 U.S.C. §824

(d).

## PLAINTIFFS' REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF SHOULD BE DENIED

### A.     Standard for Injunctive Relief

The decision whether to grant preliminary injunctive relief under Federal Rule of Civil

Procedure 65 is reserved to the sound discretion of the Court.  Fed. R. Civ. P. 65(a).  The Court's

exercise of this discretion is subject to the admonition of the Supreme Court that an injunction

should issue only when the intervention of a court of equity "is essential in order effectually to protect property rights against injuries otherwise irremediable." *Weinberger v. Romero-Barcelo*, 455 U.S. 305 (1982). It is well settled that injunctive relief is an extraordinary remedy, and that the party seeking it has a substantial burden of proof. *American Coastal Line Joint Venture v. United States Lines, Inc.*, 580 F. Supp. 932, 935 (D.D.C. 1983). *See also Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205, 1208 (D.C. Cir. 1989); *Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958).

To be entitled to the extraordinary remedy of injunctive relief, a plaintiff must show that: (1) he has a substantial likelihood of prevailing on the merits of its claims; (2) a preliminary injunction is necessary to prevent him from suffering irreparable injury; (3) the threatened injury to the plaintiff outweighs the possible harm to others; and (4) the public interest favors issuance of the injunction. *Sea Containers*, 890 F.2d at 1208; *Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C. Cir. 1977); *Virginia Petroleum*, 259 F.2d at 924-25. These factors "interrelate on a sliding scale and must be balanced against each other. 'If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in the other areas are rather weak.'" *Serono Laboratories, Inc. v. Shalala*, 158 F.3d 1313, 1318 (D.C. Cir. 1999), (quoting *CifiFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)). By the same token, if the plaintiff makes a weak showing on one factor, the other factors may not be enough to compensate. *Barton v. District of Columbia*, 2002 U.S. Dist. LEXIS 15494, at *18 (D.D.C. 2002) (*citing Taylor v. RTC*, 56 F.3d 1497, 1506 (D.C. Cir.), *amended on other grounds on reh'g*, 66 F.3d 1226 (D.C. Cir. 1995)).

When a plaintiff seeks a preliminary injunction that would alter the status quo, rather than

preserve it, he "faces an additional hurdle because it seeks a mandatory injunction as opposed to a prohibitive injunction." *Mylan Pharmaceuticals, Inc. v. Shalala*, 81 F. Supp. 2d 30, 36 (D.D.C. 2000).  The purpose of a preliminary injunction is to "preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).  Therefore, "where an injunction is mandatory - that is, where its terms would alter, rather than preserve, the status quo by commanding some positive act - the moving party must meet a higher standard than in the ordinary case by showing 'clearly' that he or she is entitled to relief or that 'extreme or very serious damage' will result from the denial of the injunction." *Phillip v. Fairfield Univ.*, 118 F.3d 131, 133 (2d Cir. 1997);  *see also Columbia Children's Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 15 F. Supp. 2d 1, 4 (D.D.C. 1997), *aff'd*, 159 F.3d 636 (D.C. Cir. 1998).

In this Circuit, courts have held that "the power to issue a preliminary injunction, especially a mandatory one, should be sparingly exercised." *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir.1969).  *Compare Stanley v. University of Southern Cal.*, 13 F.3d 1313, 1319 (9th Cir. 1994) ("[W]here a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction."); *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098-99 (10th Cir. 1991) (those injunctions that alter the status quo, and those that afford the movant substantially all the relief he may recover at the conclusion of a full trial on the merits "are disfavored and they require that the movant satisfy an even heavier burden of showing that the four factors listed above weigh heavily and compellingly in movant's favor before such an injunction may be issued.")

9

**B.**    **Plaintiffs Cannot Meet Their Burden of Demonstrating a Substantial Likelihood of Success on the Merits**

Plaintiffs' claims likely will fail on the merits for several reasons.

First, as shown above, Plaintiff cannot prove that this Court has subject matter jurisdiction over the case. Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, "[t]he plaintiff bears the burden of persuasion to establish subject matter jurisdiction by a preponderance of the evidence." *Nemariam v. Federal Democratic Republic of Ethiopi,* 400 F.Supp.2d 76, 80 (D.D.C.2005)(*citing Pitney Bowes, Inc. v. United States Postal Serv.,* 27 F.Supp.2d 15, 19 (D.D.C.1998)).

Second, plaintiffs cannot prove that there is no provision for a prompt adjudication of the immediate suspension. As is reflected above, the decision of the Administrator to immediately suspend is directly reviewable by a court of competent jurisdiction. 21 U.S.C.A. § 877. Such review is obtained "upon petition filed with the court and delivered to the Attorney General within thirty days after notice of the decision." *Id.* In addition, 21 U.S.C. §824 (d) specifically advises "The suspension remains in effect until the DEA Deputy Administrator issues her final order unless, in the interim, the suspension is "withdrawn by the [Deputy Administrator] or dissolved by a court of competent jurisdiction." "The plain language of this section [21 U.S.C. §824(d)] means that one faced with becoming the victim of the harsh expedient of suspension without prior notice may resort to the appropriate district court in search of appropriate relief." *Norman Bridge Drug Co. v. Banner,* 529 F.2d 822 (1976), 823 -824 (C.A.Ala. 1976). Although the Notices of Suspension state that it is the Administrator's "preliminary conclusion" that

10

continued registration would constitute an imminent danger to the public health and safety, the

suspension is ripe for review by a court of competent jurisdiction.

> Generally, the disputed agency action must be "final agency action." 5 U.S.C. §
> 704. This requirement, however, may be avoided when "review is sought ...
> pursuant to specific authorization in the substantive statute...." *Id.* This court agrees
> with the Fifth Circuit's determination that the plain language of the CSA signifies
> that a registrant subject to immediate suspension of registration may seek judicial
> review by a district court before the suspension order becomes final. 21 U.S.C. §
> 824(d) (providing that a court of competent jurisdiction may dissolve a suspension
> order); *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 823-24 (5th Cir.1976).
> Thus, the court has the authority to review the agency action although it is not final
> agency action.

*Neil Laboratories, Inc. v. Ashcroft,* 217 F.Supp.2d 80, 85 fn.6 (D.D.C.2002).

The Federal Rules clearly have provision for prompt hearing of plaintiffs' motion for relief

from the immediate suspension.

In *Feinberg v. Federal Deposit Ins. Corp.* 420 F.Supp. 109 (D.D.C. 1976) the Court

addressed the requirements for a post-suspension hearing where there had been no pre-suspension

hearing.

> Under these circumstances, due process requires that the individual be given an
> immediate post-suspension hearing. While the hearing need not be a trial-type
> hearing, notice, the opportunity to be represented by counsel, for written
> submissions, and for oral argument, appear mandated by the circumstances.
> Certainly notice of the right to be heard is essential.

*Id.* 420 F.Supp. at 120-121.

In the instant case plaintiffs received notice of the suspension, and the reason therefore,

along with the show cause order.  They are on notice from the statute itself, 21 U.S.C. §824(d), of

their right to seek dissolution of the suspension by a court of competent jurisdiction.   Finally a

petition to a federal court clearly affords plaintiffs a prompt hearing, including the opportunity for

representation by counsel, written submission and oral argument.

Third, the Court does not have jurisdiction because plaintiffs did not timely file a petition in the Court of Appeals or the District Court. The plaintiffs received the orders to show cause and notices of immediate suspension on September 21, 2005. Complaint at ¶¶ 34 and 42. They filed the instant action on January 23, 2006. Docket entry no. 1. They were required to file in the Court of Appeals within 30 days. *See Empath Pharmaceutical Co. v. Drug Enforcement Admin.* 1996 WL 467693, *1 (D.C.Cir.,1996) ("The petition for review was filed well beyond the thirty-day statutory time limit prescribed by 21 U.S.C. § 877. Accordingly, the petition is now time-barred and the court is without authority to extend the limitations period.") and *Triestman v. Drug Enforcement Admin.*, 1996 WL 135129, *1 (D.C.Cir.1996)(same and both citing to *Nutt v. Drug Enforcement Admin.*, 916 F.2d 202, 203-04)(5th Cir. 1990). Therefore, neither this Court nor the Court of Appeals has jurisdiction to hear the matter. *See Nutt v. Drug Enforcement Admin.*, 916 F.2d 202, 203-04 (5th Cir.1990).

Fourth, the plaintiffs have not claimed in their complaint or memorandum that the DEA issued the immediate suspensions improperly. They have not claimed that DEA acted outside of its authority, or arbitrarily or capriciously in ordering their immediate suspension. *See Neil Laboratories*, 217 F.Supp.2d at 84-85. ("The scope of judicial review under the APA is fairly limited. The agency action in review is 'entitled to a presumption of regularity. . . .' The reviewing court may set aside agency actions, findings, and conclusions when they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' 5 U.S.C. § 706(2)(A).").

Rather, plaintiffs seek to change the *status quo* by contending that a change in state

12

pharmacy board rules which occurred after the suspension was issued, negates the basis for "a continued finding that plaintiffs' registration represents an immediate danger. . . ." Complaint at ¶¶59-60.  Simply put, they ask the Court to dissolve immediate suspensions which were properly issued, since plaintiffs do not challenge the finding that as of the date the suspensions issued their continued registration would constitute an imminent danger to the public health and safety.

> In this Circuit, "the power to issue a preliminary injunction, especially a mandatory one, should be sparingly exercised." *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C.Cir.1969) (internal quotations and citations omitted); *see also Columbia Hosp. for Women Found., Inc. v. The Bank of Tokyo-Mitsubishi, Ltd.*, 15 F.Supp.2d 1, 4 (D.D.C.1997), aff'd, 159 F.3d 636 (D.C.Cir.1998). I must therefore review Mylan's request for injunctive relief with even greater circumspection than usual in determining whether the "extraordinary writ of preliminary injunction" is warranted in this case.

*Mylan Pharmaceuticals, Inc. v. Shalala*,  81 F.Supp.2d 30, *36 (D.D.C.2000).

Plaintiffs have not satisfied the "heavier burden of showing that the four factors [for injunctive relief] weigh heavily and compellingly" in their favor .  *SCFC ILC, Inc.*, 936 F.2d at 1098-99.   Plaintiffs do not explain how the fact that in October 2005, the amendment of a state pharmacy board rule to "prohibit[] the filling of prescriptions issued solely upon the patient's completion of an Internet questionnaire" voids the basis for the Deputy Administrator's finding. The orders to show cause presented significant probable cause to believe that plaintiffs knowingly were issuing prescriptions for highly addictive drugs in violation of the CSA where there  was no doctor patient relationship with the prescribing physician.

The DEA's authority to suspend the Plaintiff' s registrations is derived from 21 U. S. C. § 824 (d) , which provides The Attorney General may, in his discretion, suspend any registration simultaneously with the institution of proceedings under this section, in cases where he finds that

13

there is an imminent danger to the public health and safety.

The Attorney General has delegated this authority to DEA's Administrator by regulation. 28 C.F.R. § 0.100 and 0.104. Section 824 (d) 's language clearly and specifically granted discretionary authority to DEA to suspend any registration simultaneously with the institution of revocation proceedings where DEA finds that there is imminent danger to the public health or safety. The term "imminent danger to the public health or safety" is not defined in the statute. However, the United States Supreme Court has held, where Congress has granted agency discretion, the resulting decisions are subject to judicial review only to determine whether an agency has exceeded its statutory authority or has acted arbitrarily. *Fidelity Federal Savings and Loan Association v. de la Cuesta*, 458 U.S. 141, 159 (1982). See *In re : Edward R. Burka, M. D.*, 684 F. Supp. 1300, 1305 (MD. Pa 1988) (holding that in reviewing whether the DEA has abused its discretion in issuing an immediate suspension, a District Court scope of review is limited to whether there is a rational basis, the District Court "does not sit as an agency official responsible for weighing evidence and making the initial [suspension] decision. "), *accord Neil Laboratories*, 217 F.Supp.2d at 87 ( "because the DEA provided a rational connection between the facts and the conclusion that Neil Labs' continued registration would constitute imminent danger to the public, the court must show deference to the agency. *Burlington Truck Lines* [v. U.S.], 371 U.S. [156] at 168[(1962)])

The Show Cause Orders issued to plaintiffs clearly show probable cause to believe that plaintiffs were dispensing drugs in violation of the CSA and that continued registration of plaintiffs poses an imminent danger. See *Barry v. Barchi*. 443 U.S.55, 64-65 (1979)(State was entitled to impose an interim suspension pending the final hearing, "whenever it has satisfactorily

established probable cause to believe that a horse has been drugged and that a trainer has been at least negligent in connection with the drugging.")

In the instant case Congress has legislated that the government may "suspend any registration simultaneously with the institution of proceedings under this section, in cases where he finds that there is an imminent danger to the public health or safety." 21 U.S.C. §824(d). The government's interest in public health and safety in the dispensing of controlled substances clearly is sufficient to entitle defendant to impose an interim suspension pending prompt determination of whether plaintiff's registrations will be revoked.

The orders to show cause and notices of immediate suspension set forth the facts supporting probable case to believe that plaintiff's registrations should be revoked because they diverted massive amounts of controlled substances in violation of law.

In the case of Aurora, the show cause order indicates that approximately three months after Robin Hyman assumed ownership and pharmacist duties at Aurora, the pharmacy began participating in two Internet operations with Internet Facilitation Centers (IFC). Aurora Show Cause at p. 3. An IFC allows drug seekers to purchase self selected drugs without consultation with a physician or a medical examination. *Id.* The IFC electronically provides to a physician in its roster of physicians, information on the drug requested and cursory descriptive information such as height, weight and age. The physicians do electronic prescription authorizations which are then downloaded by participating pharmacies such as plaintiffs. *Id.* DEA's investigation showed that Aurora was filling between 300 to 700 Internet drug orders per day. *Id.*

The Order demonstrated that Aurora had reason to know that the prescriptions were not issued in the usual course of Professional treatment, 21 C.F.R. §1306.04(a), because it filled

"numerous prescriptions authorized by the same physician, on the same day, for multiple Internet customers who do not reside in the state in which the physician resides; Aurora fills inordinately large quantities of prescriptions pre day, per physician; and the prescriptions are for disproportionate amounts of one or two types of highly addictive and abused controlled substances." *Id.* at ¶8.

On July 13, 2005, DEA Diversion Investigators personally informed Ms. Hyman that all prescriptions Aurora filled for its Internet business were illegal because they were issued without a physician-patient relationship. *Id.* at ¶8a.. On July 21, 2005, Ms. Hyman attended a public rule making hearing during which a DEA Group Supervisor testified, inter alia, that the IFCs are illegal under federal law because of no physician-patient relationship. *Id.* at ¶8b. On August 10, 2005, Ms. Hyman admitted that Aurora was still dispensing Internet Drug Orders despite earlier notification that it was illegal. *Id.* at ¶ 8c. She was again informed that filling the drug orders from internet sites was illegal and that Aurora must stop filling the drug orders. *Id.* Nonetheless, on August 16, 2005, Aurora continued to fill internet drug orders. *Id.* at ¶8d. Thus the pharmacy continued its illegal activity after actual notice.

The Show Cause Order also described Aurora's dispensing practices based on review of its records on two sample days–one before and one after Hyman was given notice of the illegality of the internet operation. *Id.* at¶¶9-11. The Order also reflected at an individual had died of a "polysubstance overdose" involving carisoprodol dispensed to her by Aurora through the Internet scheme. *Id.* at ¶12.

Based on the facts set forth in the show cause order there was probable cause for the administrator's preliminary finding that Aurora was responsible for the diversion of large

quantities of controlled substances.  There also was probable cause to believe that Aurora's

continued registration would 'constitute an imminent danger to the public health and safety

because of the substantial likelihood that Aurora will continue to divert controlled substances to

drug abusers.  *Id.* at p. 7 ¶14

City View's Order to Show Cause demonstrated similar probable cause.  City View also

was dispensing controlled drugs for an IFC.  City View Show Cause Order at ¶¶8, 12-18.

City View filled approximately 4,000 controlled substance prescriptions from mid-

December, 2004 to March 4, 2005.  *Id.* at ¶12.  The majority of the sales were from authorizations

from six doctors who did not practice in Colorado.  *Id.*  Although City View's records indicated

that Dr. Olmo practices in Colorado, that doctor is actually registered to practice in Puerto Rico.

Another of the six, Dr. Lopez, is not registered at all; his DEA registration expired in the 1980's.

*Id.*

City View's records reflect that on April 11, 2005, it filled approximately 308 orders for

internet customers.  *Id. at ¶13.*  The prescribing physicians were not located in the same state as

the customer, the same physicians were issuing drug orders for numerous customers in many

different states on the same day.  *Id.*  Additionally the majority of the drugs were for highly

abused and addictive controlled substances*. Id.*  The Show Cause Order noted the similar pattern

on additional days.  *Id.* at ¶¶14, 15-18.  In addition City View purchased large quantities of highly

abused and addictive controlled substances from different distributors, *Id.* ¶10-11, 19-22,  and

was found on March 4, 2005 to be in violation of various CSR regulations.  *Id* at ¶9.

All of the above established probable cause and a rational basis for the administrator's

preliminary finding that City View was responsible for the diversion of large quantities of

controlled substances.  There also was probable cause to believe that City View's continued

registration would 'constitute an imminent danger to the public health and safety because of the

substantial likelihood that City View will continue to divert controlled substances to drug abusers.

*Id.* at ¶23.

In view of this showing of plaintiffs' disregard and violation of federal statutes and

regulations in regard to the distribution of dangerous controlled substances, the mere amendment

of a Colorado Pharmacy Board rule, cannot overcome the administrator's decision to immediately

suspend plaintiffs.

Fifth, the regulations clearly provide that plaintiffs are entitled to an expedited hearing on

the proposed revocation.

The pertinent statute provides:

(c) Service of show cause order; proceedings

Before taking action pursuant to this section, or pursuant to a denial of registration
under section 823 of this title, the Attorney General shall serve upon the applicant
or registrant an order to show cause why registration should not be denied,
revoked, or suspended. The order to show cause shall contain a statement of the
basis thereof and shall call upon the applicant or registrant to appear before the
Attorney General at a time and place stated in the order, but in no event less than
thirty days after the date of receipt of the order.

21 U.S.C.A. § 824 (c).

(e) The Administrator may suspend any registration simultaneously with or at any
time subsequent to the service upon the registrant of an order to show cause why
such registration should not be revoked or suspended, in any case
where he/she finds that there is an imminent danger to the public health or safety.
If the Administrator so suspends, he/she shall serve with the order to show cause
pursuant to § 1301.37 an order of immediate suspension which shall contain a
statement of his findings regarding the danger to public health or safety.

21 CFR § 1301.36 (e).

18

Any registrant whose registration is suspended under paragraph (e) of this section may request a hearing on the revocation or suspension of his/her registration **at a time earlier than specified in the order to show cause pursuant to § 1301.37.** This request **shall** be granted by the Administrator, who shall fix a date for such hearing as early as reasonably possible.

21 CFR § 1301.36 (h).

Thus, 21 CFR §1301.36 does provide for a prompt post-suspension hearing on the proposed revocation  at the request of a registrant immediately suspended pursuant to 21 CFR §1301.36(e).

In the instant case, pursuant to 21 C.F.R. §1301.36(h), plaintiff was advised  ”[i]f you request an expedited hearing. . .such hearing will be held. . .30 days after the date on which your written request is received. . . .  The date and location may be changed by the Administrative Law Judge responsible for the case, after notice and consultation with the parties, and will be fixed as early as is reasonably possible. ” Aurora Show Cause Order at p. 7; City View Show Cause Order at p. 9.  The ALJ advised that the hearing could not be held within the thirty-day time frame and subsequently scheduled the hearing for March 21-23, April 25-27 and May 23-25, 2006.  Behr Dec. at ¶5 and Ex. A p. 2.  Plaintiffs do not allege that they objected to the amended schedule.

Plaintiffs’ complaint estimates that the time by which they will obtain a final decision on the proposed revocation from the DEA will take over 20 months.  Complaint at ¶4.  It explains the reasons for the estimated delays: First, there are only two ALJ’s who conduct the show cause hearings for the entire country.  *Id.* at ¶19.  Second, the conduct of the hearing is governed by the APA and DEA’s applicable rules at 21 C.F.R. §§ 1316.41-1316.67.  Complaint at ¶¶19-25.  After the hearing the ALJ submits a written recommendation to DEA’s Deputy Administrator.  21 CFR § 1316.65.  The Registrant is entitled to file exceptions to the Deputy Administrator who then

issues a final agency order, which is not effective until after it is publicized in the Federal

Register.  21 C.F.R. §1316.66-67.  The Registrant may then seek appellant review of the final

agency order.  21 U.S.C.§877.

> The Supreme Court has stated:
>
> The Due Process Clause requires provision of a hearing "at a meaningful time."
> *E.g., Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62
> (1965). At some point, a delay in the post-termination hearing would become a
> constitutional violation. *See Barry v. Barchi*, 443 U.S., at 66, 99 S.Ct., at 2650. In
> the present case, however, the complaint merely recites the course of proceedings
> and concludes that the denial of a "speedy resolution" violated due process. App.
> 10. **This reveals nothing about the delay except that it stemmed in part from
> the thoroughness of the procedures**. A 9-month adjudication is not, of course,
> unconstitutionally lengthy per se. Yet Loudermill offers no indication that his wait
> was unreasonably prolonged other than the fact that it took nine months. The
> chronology of the proceedings set out in the complaint, coupled with the assertion
> that nine months is too long to wait, does not state a claim of a constitutional
> deprivation.

*Cleveland Bd. of Educ. v. Loudermill,*  470 U.S. 532, 547 (1985)(emphasis added).  Plaintiffs'

complaint reveals only that the final decision on the proposed revocation may be delayed due to

congestion on the dockets of the only two ALJ's assigned to the DEA, and due to the

thoroughness of procedures imposed by the C.F.R.    Plaintiff has offered no more than did the

plaintiff in *Loudermill.*  Therefore his claim does not state a claim of constitutional deprivation.

*See Ritter v. Cohen*, 797 F.2d 119, 124 (3ʳᵈ Cir.,1986):

> Although the theoretical length of delay in this case exceeds that in *Loudermill* or
> *Mathews,* we do not believe, under the circumstances here, that the sequence
> posited by the plaintiff is sufficient by itself to assert a claim under the due process
> clause. *See Givens v. United States Railroad Retirement Board,* 720 F.2d 196, 201
> (D.C.Cir.1983) (nineteen-month delay in adjudicating appeal of denial of railroad
> benefits does not violate due process, where plaintiff offers no evidence of
> intentional delay) *cert. denied,* 469 U.S. 870, 105 S.Ct. 219, 83 L.Ed.2d 149
> (1984); *Frock v. United States Railroad Retirement Board,* 685 F.2d 1041, 1047

(7th Cir.(1982)) (two-year delay in adjudicating appeal does not violate due process) *cert. denied,* 459 U.S. 1201, 103 S.Ct. 1185, 75 L.Ed.2d 432 (1983). *Cf. Kelly v. Railroad Retirement Board,* 625 F.2d 486 (3d Cir.1980) (period of three years and nine months to process disability application from initial application through administrative appellate review violates due process).

*Ritter*, 797 F.2d at 124.

Sixth, plaintiffs cannot prove that there is no provision for them to obtain a prompt hearing and prompt adjudication of the proposed revocation.  Under the Administrative Procedure Act ("APA"), plaintiffs may seek mandamus to compel a timely revocation hearing.  The APA requires agencies to conclude matters presented to them "within a reasonable time," 5 U.S.C. § 555(b) (1982), and stipulates that the "reviewing court shall ... compel agency action unlawfully withheld or unreasonably delayed ...." 5 U.S.C. § 706(1).  Thus, if plaintiffs believe that there is unreasonable delay in their revocation hearing, they may seek mandamus from the Court of Appeals.  *See, e.g., Telecommunications Research*, 750 F.2d at 79 ("Congress has instructed statutory review courts to compel agency action that has been unreasonably delayed. 5 U.S.C. § 706(1)"); *In re American Rivers and Idaho Rivers United,* 372 F.3d 413, 417-418 (D.C.Cir.2004)("Mandamus is an extraordinary remedy reserved for extraordinary circumstances. . . . . An administrative agency's unreasonable delay presents such a circumstance because it signals the "breakdown of regulatory processes.")(citation omitted).

Based on the above, the plaintiffs are unlikely to prevail on the merits.

**3. Plaintiffs Cannot Demonstrate That the Public Interest Favors a Dissolution of the Suspensions or that Other Persons will Not be Substantially Harmed if a Suspension is Granted.**

In this case, the third and fourth of the traditionally considered factors can be considered as one, for the other persons whose interests may be harmed if an injunction is granted, and the

21

public, in whose interest the Deputy Administrator must be presumed to have acted, are one and the same.

In litigation involving the administration of regulatory statutes designed to promote the public interest, this factor necessarily becomes crucial. The interest of private litigants must give way to the realization of the public purposes. *Golden Gate Bottling Co. v. NLRB*, 414 U.S. 168, 179-80 (1973) (quoting *Virginian Ry. Co. v. System Federation No. 40*, 300 U.S. 515, 552 (1937)("Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved.") ; *Hamlin Testing Laboratories Inc. v. Atomic Energy Commission*, 337 F. 2d 221, 222 (6th Cir. 1964) (denying stay in deference "to the expert judgment of the Commission as a coordinate agency of government specially created to further public purposes" of regulating radioactive materials).

Similar to a stay, plaintiffs in seeking to dissolve an unchallenged suspension order should be required to rebut the presumption of the administrative order's compatibility with the public interest by establishing the contrary. A stay must be denied whenever the movant fails to carry the burden of interest. *Hamlin Testing*, 337 F.2d at page 222. Thus, once the Government shows through a determination by an administrative agency that the public interest would be served were its order given effect, i.e. the suspension, it is incumbent upon the movant to make a showing that the dissolution of the suspension would serve the public interest.

Plaintiffs suggest that reissuing their registrations is in the public interest because patients have to go elsewhere to fill their prescriptions. Hyman Dec. At ¶8; Longo Dec. at ¶8.  Indeed, Ms Longo avers that she has helped patients by paying their co-payments and forgiving bad checks –

practices which may amount to mail or wire fraud and the making of false statements in relation to

drug insurance claims.   The public is not harmed by having to obtain prescriptions from other

pharmacies and by the cessation of other possibly illegal activity by a pharmacy.  By dispensing

controlled substances in disregard to whether there was a doctor patient relationship or a

rudimentary medical examination and proper medical history, plaintiffs risked that their

purchasers could potentially become ill or die from taking highly abused and addictive controlled

substances. Indeed, one such death is reflected in the Aurora Show Cause Order at ¶12.  In

dispensing in the manners described above, plaintiffs have shown disregard for the law and their

responsibilities pursuant to 21 C.F.R. § 1306.04.  The public interest in the enforcement of the

Controlled Substances Act must certainly overcome plaintiffs' interest in retaining their

registration to handle controlled substances throughout the pendency of the administrative

proceedings.

   The public interests cited in plaintiffs' memorandum are "the strong interest in meticulous

compliance with law by public officials, and preservation of "the Plaintiffs' right to meaningful

judicial review."  Plaintiffs' memorandum at p. 15-16.  However, as was discussed above, there

has been no violation of plaintiffs' constitutional rights and the statute provides for prompt

judicial review of plaintiffs' immediate suspension.

   Plaintiffs have not met their the burden of proving that their DEA registration is in the

public interest, nor have they submitted evidence overcoming the conclusions of the

administrator.

## V1. CONCLUSION

   Plaintiffs have failed to make the requisite showing for an injunction of the Acting Deputy

23

Administrator's order of immediate suspension.  Plaintiffs have made no showing of a likelihood of success on the merits; they have not, and cannot, demonstrate that the public interest favors the injunction they have sought. To the contrary, the public interest cries out for the denial of the injunction.

For all the foregoing reasons, the Defendants respectfully request that plaintiffs' motion for a TRO and for injunctive relief be denied.

Respectfully submitted,

_____

KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney

_____

R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney

_____

RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514/6970