UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| APOTHECARY ARTS PHARMACY INC. d/b/a AURORA COMMUNITY PHARMACY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ALBERTO R. GONZALES, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   CIV. NO. 1:06-cv-00119-RCL<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiffs Apothecary Arts Pharmacy Inc. d/b/a Aurora Community Pharmacy ("Aurora") and City View Pharmacy ("City View") (each a "Plaintiff" and collectively "Plaintiffs") hereby oppose defendants' motion to dismiss and reply to defendants' opposition to plaintiffs' motion for a preliminary injunction.

Plaintiffs, whose DEA registrations were immediately suspended by DEA upon being served with an Order to Show Cause Why those registrations should not be revoked, seek an order from the Court reinstating those registrations pending a determination by the Agency on the merits.

**A.  This Court Has Subject Matter Jurisdiction.**

The government has moved to dismiss arguing that this court does not have subject matter jurisdiction.  The government, relying on 21 U.S.C. § 877 which provides for the Court of Appeals review of all final determinations of the Attorney General, asserts that jurisdiction lies

in the Court of Appeals.  In making its argument, the government ignores the language in the Controlled Substances Act ("CSA").

Under the CSA, an immediate suspension remains in effect through appeal "unless sooner … dissolved by a court of competent jurisdiction."  21 U.S.C. § 824(d).  Several of the cases cited in the Government's motion find that the District Court is a court of competent jurisdiction.  *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 823-24 (5th Cir. 1976); *In the Matter of Burka, M.D.,* 684 F. Supp. 1300 (E.D. Pa. 1988);  *Neil Labs, Inc. v. Ashcroft*, 217 F. Supp. 2d 80 (D.D.C. 2002) (Urbina, J.).  In *Neil Labs*, Judge Urbina found that he could review an immediate suspension even though it is not a "final order."  *Id.* at 85 n.6.

> The Court agrees with the Fifth Circuit's determination that the plain language of the CSA [Controlled Substances Act] signifies that a registrant may seek judicial review by a district court before the suspension order becomes final.  21 U.S.C. § 824(d) (providing that a court of competent jurisdiction may dissolve a suspension order); *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 823-24 (5th Cir. 1976).  Thus, the court has the authority to review the agency action although it is not final agency action.

*Id.* at 85 n.6.

Instead, the government relies on three Court of Appeals cases seeking mandamus against a federal agency under the All Writs Act.  *Telecommunications Research and Action Center [TRAC] v. F.C.C.,* 750 F.2d 70, (D.C. Cir. 1984), *Community Nutrition Institute v. Young* 773 F.2d 1356, (D.C. Cir. 1985) and the more recent *In Re: Tennant*, 359 F.3d 523 (D.C. Cir. 2004).  In those cases, the Court was required to determine whether it had jurisdiction to hear the case because the All Writs Act does not, itself, grant the Court jurisdiction.  Thus, the Court noted that

> In *TRAC*, the petitioner sought a writ of mandamus because of a lengthy delay in an FCC inquiry responding to the petitioner's complaint that a telephone provider had overcharged its ratepayers.

> This court would have had jurisdiction, under 47 U.S.C. § 402(a) (1982), to review any final order arising from the FCC inquiry, and we held that we therefore had jurisdiction to review the petitioner's claim of unreasonable delay "in order to protect [our] future jurisdiction."

*In re Tenant*, 359 F.3d at 527 (quoting *TRAC*, 750 F.2d at 76). In *Tenant*, the court found that since Tenant had never initiated a proceeding with the FCC, it did not have authority under the All Writs Act to issue a writ of mandamus. *Id.*

Plaintiffs do not seek mandamus nor do they premise this Court's jurisdiction on the All Writs Act. Instead, Plaintiffs have invoked 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States); the Controlled Substances Act ("CSA"), 21 U.S.C. § 801 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. Complaint, ¶ 10. Plaintiffs have asked that the Court exercise its authority to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and 5 U.S.C. §§ 701-706. *Id.*, ¶ 11. Therefore, the cases cited by the Government are in apposite.

Additionally, in both *Time Warner Entertainment Co., LP v. Federal Communications Commission,* 810 F.Supp. 1302 (D.D.C. 1992) (Jackson, J.) and *Ticor Title Insurance Co. v. Federal Trade Commission,* 625 F. Supp. 747 (D.D.C. 1986) (Hogan, J.), the court rejected the government's claim that the court did not have jurisdiction under *TRAC* to consider a constitutional challenge to a statute. In *Time Warner,* cable television owners/operators and programmers brought suit for declaratory judgment and injunctive relief to prevent the FCC from enforcing provisions of the Cable Television Consumer Protection and Competition Act and Cable Communications Policy Act. The defendants argued that jurisdiction over most of the

plaintiffs' claims resided exclusively in the court of appeals in accordance with *TRAC*. The *Time Warner* court, in rejecting that challenge, explained that the D.C. Circuit's reasoning "ignore[d] . . . the jurisdiction of the court of appeals to review decisions of [the district court], as well as those of the FCC . . .. Moreover, the D.C. Circuit has never held in subsequent cases that *TRAC* precludes a district court from hearing a constitutional challenge to an agency's enabling act merely because the court of appeals ultimately has exclusive jurisdiction over the agency's actions taken pursuant to that act." *Time Warner,* 810 F.Supp. at 1303-1304.

Therefore, this Court has jurisdiction to hear plaintiffs' suit and the government's motion to dismiss must be denied.

**B. Plaintiffs are Likely to Succeed on the Merits.**

The government asserts that plaintiffs are not entitled to a preliminary injunction. The government makes a scattershot attempt to demonstrate that plaintiffs do not qualify under the first element for a preliminary injunction: likelihood of success on the merits. To the contrary, Plaintiffs are likely to demonstrate that there is no statutory or rule-based procedure that requires and assures their constitutional right to a prompt adjudication of a post-suspension review. This showing, in conjunction with the other factors supporting plaintiffs requested injunction, should result in this Court's ordering DEA to re-issue plaintiffs' registrations pending the adjudication of the merits of the pending administrative show cause hearings.

We address the government's points in order.

First, contrary to the governments assertion, and as noted above, this Court has subject matter jurisdiction.

Second, defendants' argue that "plaintiffs cannot prove that there is no provision for prompt adjudication of the immediate suspension [because] the decision of the Administrator to immediately suspend is directly reviewable by a court of competent jurisdiction." Defendants cite 21 U.S.C. §§ 877 and 824(d). Defendant's claim is hard to accept since this method of review is not set forth by DEA in the Immediate Suspension Order. In that Order, DEA only informed plaintiffs of their right to review under its regulations. DEA has waived any reliance on these statutes.

Further, as noted above, 21 U.S.C. § 877 is not controlling. Even if it were, the provision only grants the right to review a final order to the Court of Appeals. The statute does not establish any procedures for a "prompt" review and decision of an immediate suspension. Neither does the other provision cited by the government, section 824(d). The government relies on a sentence fragment in § 824(d) providing that an immediate suspension remains in effect unless "dissolved by a court of competent jurisdiction." The cited language does not establish any procedure for the review of the immediate suspension nor does it describe the nature of the action that would support such a dissolution or the standard to be applied. As such, this statutory language does not assure the due process to which plaintiffs are entitled. Since neither provision of the statute establishes a process of expedited review or specifies any time period for a post-suspension hearing and adjudication, the scheme is constitutionally infirm under the due process clause. *Barry v. Barchi,* 443 U.S. 55, 66 (1979); *see also, Feinberg v. FDIC*, 420 F. Supp. 109 (D.D.C. 1976).

Congress clearly can construct a post-suspension review procedure that satisfies due process. After a court held the FDIC's power to suspend bank officers unconstitutional,

5

Congress amended the relevant statute.  Congress established the following procedures for reviewing a suspend that occurred without notice and hearing.  First, the individual has thirty days to request a hearing.  Second, the Agency must fix a time for a hearing in thirty days, unless more time is requested by the petitioner.  Finally, a decision must be rendered in sixty days.  *See* 12 U.S.C. §1818(g)(3) set out in *FDIC v. Mallen*, 486 U.S. 230, 235 n.6 (1988).  No similar requirements are contained in the CSA.

Third, defendants raise a second jurisdictional challenge alleging that plaintiffs' failed to seek review in 30 days relying on 21 U.S.C. § 877.  However, as noted above, section 877 does not apply to this challenge because Plaintiffs are not challenging a final order.  *See Neil Laboratories, Inc. v. Ashcroft*, 217 F. Supp. 2d 80 (D.D.C. 2002) (District Court complaint filed approximately 60 days after service of the immediate suspension).  Furthermore, DEA did not give plaintiffs notice of this provision.  In fact, DEA only notified Plaintiffs that they must request a hearing before the Administrative Law Judge ("ALJ") within 30 days and could request that such a hearing be expedited.

Fourth, while not necessary to their constitutional challenge, plaintiffs do challenge the validity of the decision to immediately suspend.  DEA's claim that plaintiffs were acting illegally is primarily based on its 2001 "guidance" titled "Dispensing and Purchasing Controlled Substances over the Internet," 66 Fed. Reg. 21,181 (April 27, 2001).  In that guidance, issued under the authority of DEA's Chief, Liaison and Policy Section, DEA asserts that "[c]ompleting a questionnaire that is then reviewed by a doctor hired by the Internet pharmacy could not be considered the basis for a doctor/patient relationship." *Id.* at 21,183.  However, as the Supreme Court recently stated, in rejecting an "interpretive rule" issued by the Attorney General, the CSA

6

does not delegate to the Attorney General the authority to define "standards of medical practice." *Gonzales v. Oregon,* No. 04-623 (Supreme Court Jan. 12, 2006), slip op. p. 12. The definition of standards of medical practice is reserved to the states. Thus, plaintiffs submit, the underlying basis for the finding of "imminent harm" fails and the decision is improper. Furthermore, as noted in plaintiffs' motion, Aurora had stopped the conduct to which DEA objected in response to being served with the Guidance on August 16 so it could not be found to constitute an imminent danger to the community.

Fifth, defendants' reliance on DEA's regulations, 21 C.F.R. § 1301.36(h) is unconvincing. To start with, DEA did not comply with the regulation. The regulation states, in relevant part, any registrant subject to an immediate suspension may request a hearing "at a time *earlier* than specified in the order to show cause pursuant to §1301.37. This request shall be granted by the Administrator who shall fix a date for such hearing as early as reasonably possible." 21 C.F.R. § 1306(h) (emphasis added). However, the Order to Show Cause did not bear a date for a hearing, as required. *See* 21 C.F.R. § 1301.37(c). DEA cannot claim that its procedures provide an expedited hearing when it has not complied with them.

Further, as demonstrated in plaintiffs' motion, the regulation merely instructs the Administrator to set the hearing "as early as reasonably possible." ALJ Bittner determined that the earliest date to begin the hearing is the end of March, 2006, approximately six months after the immediate suspensions went into effect, a period, we submit, that is constitutionally suspect. More importantly, the regulations do not establish any constraints on the time to complete the process. The regulations do not set any time limit for a decision or require that either the

Administrative Law Judge expedite her report and recommendation or the Administrator expedite her decision. The regulation clearly does not satisfy the due process clause.

The government relies on *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532 (1985) and *Ritter v. Cohen*, 797 F.2d 119 (3d Cir. 1986) in defending DEA's procedure that will take at least 20 months. *Loudermill* does not support a delay of that long in this post-suspension setting. At best, *Loudermill* stands for the proposition that a nine month delay is not "unconstitutionally lengthy per se" for a pre-termination hearing.

*Ritter v. Cohen, supra*, is equally inapplicable. Dr. Ritter was challenging the delay in adjudicating his appeal of his termination from the Medicaid program. Unlike Plaintiffs, Dr. Ritter had the opportunity to defend himself prior to his termination. Further unlike Plaintiffs, Dr. Ritter had the opportunity to continue to treat Medicaid patients and was eligible for reimbursement by Medicaid for that treatment if he prevailed on his appeal. The revenue Plaintiffs lose from not being able to dispense controlled substances is lost forever. Under those conditions, and based on the fact that Dr. Ritter was not indigent and could treat non-medicaid patients, the Court found that delay alone did not violate his due process rights. As noted, plaintiffs' situation is entirely different.

As the Supreme Court said in *FDIC v. Mallen*, 486 U.S. 230 (1988), decided after *Loudermill* and *Ritter*, any delay must be justified by an important government interest coupled with factors minimizing the risk of an erroneous result. Each case is determined on its own merit. Here, DEA has cited to no "important government interest" justifying a 20 month delay in providing plaintiffs a post-suspension adjudication. In contrast, plaintiffs have shown that they

are losing significant amounts of money due to the suspensions, money that they can never recover.

Finally, defendants' claim that Plaintiffs expedite DEA's consideration by seeking mandamus from the Court of Appeals under the APA is meritless.   The fact that plaintiffs may petition the Court of Appeals to order defendants to act more quickly does not guarantee the prompt post-suspension review that the constitution requires.

## C.  The Public Interest Factor

As noted in plaintiffs' memorandum, the public interest consideration supports this injunction.

Contrary to the government's assertion, there is no special consideration of the public interest factor because the case involves the government.  Even if there were, plaintiffs have shown that the conduct to which DEA objected – the filling of prescriptions based on Internet questionnaires, is now illegal in the State of Colorado, a fact that did not exist at the time of the activities at issue and a factor that was not considered by the Administrator in imposing the immediate suspension.  Under the current circumstances, Plaintiffs cannot, and will not, repeat the conduct to which DEA has objected and therefore do not constitute a danger to the community.

WHEREFORE, for the above-stated reasons and for the reasons set forth in the Memorandum in Support of Plaintiffs' Motion for a Preliminary Injunction, plaintiffs respectfully request that DEA be ordered to re-instate their registrations.

Dated: February 2, 2006

Respectfully submitted,

By: /s/ Douglas J. Behr
Douglas J. Behr  (D.C. Bar No. 163998)
Keller and Heckman LLP
1001 G Street NW, Suite 500
Washington, DC  20001
(202) 434-4200

Attorney for Plaintiffs Apothecary Arts Pharmacy Inc. and City View Pharmacy